WILLIAM D. LIBBY

*vs.*

DAVID LONG.

Cumberland.      Opinion September 6, 1928.

*Israel Bernstein,* for plaintiff.
*Abraham Breitbard,*
*Harry S. Judelshon,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, PATTANGALL, JJ.

WILSON, C. J.  The defendant at one time owned certain property consisting of a tenement house on which a mortgage already existed.  He gave a second mortgage to one Knudsen, and later purchased it and had it transferred to one Benjamin Freedman, the father-in-law of the defendant.  Prior to the assignment to Freedman, Knudsen had foreclosed the mortgage.

Thereafterward, the plaintiff acquired title to the equity.  Upon offering to redeem, Freedman, or the defendant claiming to act as agent of Freedman, demanded of the plaintiff for the mortgage debt an amount which included certain sums paid out by Freedman for repairs or improvements and commissions for collecting rentals.

To certain of these items the plaintiff objected but finally redeemed by paying, under protest, the sums demanded, and then without knowledge of Long's real interest in the mortgage brought an action against Freedman to recover back the amount which he claimed was improperly demanded.

The case against Freedman was first heard in the municipal court and appealed by Freedman to the Superior Court.  During the trial of the case in the Superior Court, Long, the defendant in the action now at bar, testified under oath that he furnished the money to purchase the second mortgage of Knudsen.

As bearing on the plaintiff's knowledge of the relations between Freedman and Long before taking judgment against Freedman, the plaintiff at the trial of the instant case at *nisi prius* was asked the following questions:

Q  Now in the former trial at this court you did hear Long testify the money was his.  Is that correct?

A  Yes.

Q  And that he furnished the money with which to take an assignment of the mortgage?

A  When it was paid off.

Q  When he took the assignment from Knudsen the money was Long's?

A  Yes.

Q  That is what Long testified to?

A  Yes.

The inference from this and other testimony in the record being

that Long was the real owner of the mortgage and the principal in the transaction, as is indicated by the following:

Q When did you first learn you had any case against David Long?

A When he claimed it was his money.

Q When did he make that claim?

A In court here. (The witness here also referring to the previous trial.)

Yet, notwithstanding Long's testimony in the action against Freedman, which the plaintiff admits was sufficient to furnish grounds for a claim against Long, the plaintiff went on and obtained a judgment against Freedman, took out execution, and cited him before a disclosure commissioner to disclose as ·to his property. Failing to disclose sufficient property to satisfy his judgment against Freedman, and it being confirmed by the disclosure that Freedman merely held title to the mortgage for Long, the plaintiff brought the action now at bar.

The presiding Justice instructed the jury that the judgment against Freedman would be no defense in the present action against Long. To this instruction the defendant excepted, and the case is here on defendant's exceptions.

The rule is well settled that either the agent or an undisclosed principal is liable at the election of a creditor or a person to whom the agent has incurred liability acting within the scope of his authority; but after a creditor has acquired knowledge of the identity of the undisclosed principal and of sufficient facts to disclose his liability as principal and elected against which one he will proceed, a judgment against either is *res adjudicata* as to the cause of action and is a bar to recovery against the other. *Kingsley* v. *Davis*, 104 Mass., 178; *Emery* v. *Fowler*, 39 Me., 326; *Piper* v. *Daniels*, 126 Me., 458.

It is urged by plaintiff's counsel that the plaintiff did not have sufficient notice of the real relations between Long and Freedman until after judgment was obtained against Freedman and in the disclosure proceedings and further that, even if Long's testimony in the trial of the cause against Freedman was sufficient to give the plaintiff notice in case of an undisclosed principal and compel an election, the relations disclosed were not those of prin-

cipal and agent but of trustee and *cestui que trust*, to which the doctrine of election does not apply.

The plaintiff, however, brings his action at law and it was tried below upon the basis of principal and agent. The first count in the plaintiff's writ so describes the relation, and while there is an omnibus count containing the customary allegations of money had and received, which the plaintiff now claims the evidence shows Long received and now holds, and which in equity and good conscience should be restored to the plaintiff, the evidence is not inconsistent with the relation of principal and agent. An agent may take and hold property in trust for his principal and in case of a passive trust in which he merely holds the legal title may act as agent of the equitable owner in the management thereof. If it were not a resulting trust and of personal property, it might be held to have been executed and both the legal and equitable title to have been vested at once in Long, II Pomeroy Eq. Juris., Sec. 98, 26 R. C. L., 1174-6, Sec. 7, 10, *Blake* v. *Collins*, 69 Me., 156, and that a clear case of principal and agent resulted.

The evidence at the first trial was sufficient, as the plaintiff himself admitted, to give him notice that Long was the principal in the transaction as to the mortgage and was liable to him for the money alleged to have been overpaid in redeeming the mortgage. Therefore having proceeded, after knowledge of an undisclosed principal and his liability as such to recover judgment against the agent, he must be held upon the record before this Court to have elected as to which one he would rely upon as his creditor and he can not now for the same cause of action recover against the principal; nor if the relation were one of Trustee and *cestui que trust* could he recover at law of the *cestui*, especially with knowledge of the relation, having recovered a judgment at law against the trustee as an individual.

There is also ·a suggestion by plaintiff's counsel in his brief of fraud on the part of the defendant in permitting the plaintiff to pursue his action against Freedman to judgment whom presumably the defendant knew to be without means of satisfying a judgment.

This contention does not appear to have been raised at *nisi prius*, and was not submitted to the jury; nor does it appear to be

supported by that degree of proof required in cases of fraud. Neither is raised by the bill of exceptions. The only questions raised here by the defendant's exceptions are whether the recovery of a judgment against an agent after notice of an undisclosed principal bars a recovery against the principal for the same cause of action, and whether the judge erred in instructing the jury that the expense of certain improvements in the building made by the assignee of the mortgage were not, as a matter of law, a part of the mortgage indebtedness. It is not necessary to consider the second exception. The mandate will be:

*Exception sustained.*